IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

**DARLENE HUGHES,**

    **Plaintiff,**

**v.**                                             **Case No. 1:15-cv-7-MW-GRJ**

**FAMILY LIFE CARE, INC.,**

    **Defendant.**
_____/

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This is an action against Family Life Care, Inc. ("FLC") by Darlene Hughes ("Hughes") for unpaid overtime compensation, declaratory judgment, and other relief under the Fair Labor Standards Act, 29 U.S.C. §§ 201–219 (the "FLSA").

Ms. Hughes moves for partial summary judgment, asserting that she is an "employee" of FLC under the FLSA. *See id.* § 203(e). In response, FLC insists that she is instead an independent contractor and thus exempt from the FLSA. For the following reasons, this Court concludes that Ms. Hughes is an employee of FLC. The motion is due to be **GRANTED**.

## I. Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the record is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material" facts are those that might affect the outcome of the case under the governing substantive law. *Id*. This Court must review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A party may seek summary judgment on a "part of each claim" rather than the whole claim. *See* Fed. R. Civ. P. 56(a).

## II. Characterization of Issue

Under the FLSA, an "employee" is "any individual employed by an employer." 29 U.S.C. § 203(e)(1). An "employer" "includes any person acting directly or indirectly in the interest of an employer in relation to an employee." *Id*. § 203(d). The term "employ" means "to suffer or permit to work." *Id*. § 203(g). Despite those broad definitions, the FLSA does not extend to independent contractors. *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1310–11 (11th Cir. 2013) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)).

As a threshold matter, this Court must decide whether the question is one of law, susceptible to proper resolution by this Court, or one of fact, generally suitable for resolution by a jury. FLC argues that the issue is one of fact and that, since its resolution is disputed, it necessarily precludes summary judgment.

The Eleventh Circuit treats this as a question of law. In *Patel v. Wargo*, 803 F.2d 632 (11th Cir. 1986), the court held that the ultimate determination of whether an individual was an "employee" or an "independent contractor" under the FLSA was a question of law, and the subsidiary findings underlying that determination were questions of fact.[1] *Id.* at 634 n .1. Resolving cases that way is the consistent practice. *See, e.g., Scantland*, 721 F.3d at 1310–11; *Antenor v. D & S Farms*, 88 F.3d 925, 929 (11th Cir. 1996); *Aimable v. Long and Scott Farms*, 20 F.3d 434, 440 (11th Cir. 1994).[2] Thus, whether one is an "employee" or an "independent

---

[1] The earliest circuit precedent addressing the point is *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668 (5th Cir. 1968). The court said that the determination of whether an individual or corporation is an "employer" or a "joint employer" under the Act is "essentially a question of fact." *See id.* at 669 (citing *Boire v. Greyhound Corp.*, 376 U.S. 473 (1964)). The *Patel* court did not squarely address why *Wirtz* was not controlling. 803 F.2d at 634. Rather, it suggested that the former Fifth Circuit had "wavered" in its position regarding the appropriate standard of review. *Id*. at 634 n.1. The Eleventh Circuit's Civil Pattern Jury Instructions do little to dispel any uncertainty regarding the proper framework. *See* United States Court of Appeals for the Eleventh Circuit, Civil Pattern Jury Instructions, §§ 4.14, 4.24 (including Annotations and Comments) (presenting determination of employee-contractor status to jury as question of fact). If this Court were considering *Wirtz* in isolation, it might be inclined to hold this question is a factual issue. But until a higher authority says otherwise, this Court accepts *Scantland*, *Antenor*, and *Aimable* as binding authority.

[2] The weight of authority among other circuits seems to support this characterization. *See, e.g.*, *Karr v. Strong Detective Agency, Inc.*, 787 F.2d 1205, 1206–07 (7th Cir. 1986); *Donovan v. Trans World Airlines, Inc.*, 729 F.2d 415, 417 (8th Cir. 1984); *Donovan v. Brandel*,

contractor" under the FLSA is to be treated as a legal determination. *Patel*, 803 F.2d at 634. The subsidiary points leading to that legal determination must be treated as factual issues. *Id.*

### III.   Analysis

Whether an individual is an "employee" or an "independent contractor" under the FLSA turns on the "economic reality" of the relationship between the parties. *Scantland*, 721 F.3d at 1311. The paramount inquiry is whether the alleged employee is economically dependent on the alleged employer. *Id.* "Putting on an 'independent contractor' label does not take the worker from the protection of the Act." *Rutherford Food Corp.*, 331 U.S. at 730. That is, "a worker may be an independent contractor under other laws or for purposes of contractual relationships, yet still meet the definition of an employee under the FLSA." *Solis v. A± Nursetemps, Inc.*, No. 5:07-CV-182-OC-10PRL, 2013 WL 1395863, at *4 (M.D. Fla. Apr. 5, 2013). What is material is whether "the work done, in its essence, follows the usual path of an employee." *Id.* "It is not significant how one 'could have' acted under the contract terms. The controlling economic realities are reflected by the way one actually acts." *Usery v. Pilgrim Equip. Co.*, 527 F.2d 1308, 1312 (5th Cir. 1976).

---

736 F.2d 1114, 1116 (6th Cir. 1984); *Bonnette v. California Health & Welfare Agency*, 704 F.2d 1465, 1468–69 (9th Cir. 1983) (treating ultimate determination as a question of law, subsidiary findings as issues of fact).

The Eleventh Circuit has used (and the parties here rely upon) six factors to guide the application of the economic-reality test:

> (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
> (2) the alleged employee's opportunity for profit or loss depending upon his managerial skill;
>
> (3) the alleged employee's investment in equipment or materials required for his task, or his employment of workers;
>
> (4) whether the service rendered requires a special skill;
>
> (5) the degree of permanency and duration of the working relationship;
>
> (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Scantland*, 721 F.3d at 1312. "While these factors serve as guides, the overarching focus of the inquiry is economic dependence." *Id.* That is, no single consideration is dispositive. Each must serve only to assess the economic dependence of the alleged employee on the alleged employer. *Usery*, 527 F.2d at 1311. "[T]he final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of [the] FLSA or are sufficiently independent to lie outside its ambit." *Id.*

After application of each of these factors to the undisputed subsidiary facts, this Court concludes that, under the FLSA, Ms. Hughes is an "employee" of FLC.

*A. Control*

"The first factor considers the nature and degree of the alleged employer's control as to the manner in which the work is to be performed." *Scantland*, 721 F.3d at 1313. The relevant inquiry here is whether FLC exercises such a significant level of control over Hughes that she does not stand as a "separate economic entit[y] . . . in business for [herself]." *Id.* This requires examination of "the nature and degree of the alleged employer's control, not why the alleged employer exercised such control." *Id.* at 1316.

The relevant undisputed subsidiary facts include these. Ms. Hughes is a certified nursing assistant ("CNA"). ECF No. 20, at 2. FLC is a nurse registry which contracts with various government agencies and arranges for CNAs to provide personal care and housekeeping services at a patient's residence. *Id*. at 1–3. Ms. Hughes has provided those services for clients of FLC from at least 2007 until November 2014. ECF No. 16-2.

When a government entity refers a patient, FLC offers a CNA the work. ECF No. 20, at 3. A CNA may refuse the work without consequence. *Id*. A CNA is not required to work a minimum number of hours or days. *Id*. A CNA may agree to work only on certain days and not on others. *Id*. A CNA may refuse to

work with certain patients or in a particular county.  *Id.*  It is disputed whether a CNA is required to ask for time off once FLC has set the month's schedule. ECF No. 16, at 10; ECF No. 20, at 3.[3]

A CNA is paid by the hour.  ECF No. 20, at 3.  The rate of pay depends on FLC's contract with the referring agency.  *Id.*  A CNA "is required to keep an accurate record of time worked[.]" ECF No. 16-3, at 9.  Failure to submit timesheets on time will result in a CNA's compensation being held or forfeited altogether.  *Id.*

Ms. Hughes is subjected to persistent oversight in the form of, among others, customer satisfaction surveys, scheduled and unscheduled supervisory visits, visit reports, and incident reports.  ECF No. 16-3, at 8, 9, 10, 15.  Ms. Hughes is also bound by a non-compete agreement with FLC, which limits her activities for two years after "termination for any reason whatsoever[.]"  ECF No. 16-10, at 2.

State law sets general duties and responsibilities of a CNA.  ECF No. 20, at 2.  FLC sets many additional requirements for its CNAs.  *E.g.*, ECF No. 16-3, 16-8, 16-11.  For example, the handbook that Ms. Hughes is required to follow or else be terminated has requirements about, among other things, confidentiality, smoking, alcoholic beverages and controlled substances, appearance and conduct, tardiness and absenteeism, and secondary employment.  ECF No. 16-3.  The

---

[3] Though this fact would be relevant to the analysis, its resolution alone is not material such as to preclude summary judgment.

handbook prohibits, among various other activities, transporting a client, accepting tips from a client, and taking meals at a client's expense.  ECF No. 16-3, at 13–14.  The handbook requires Ms. Hughes to behave in a "friendly, cheerful, and dignified manner."  ECF No. 16-3, at 6.  Beyond that, the minutia of Ms. Hughes's everyday homemaking are broken down and itemized, going so far as to specify which rooms are to be dusted.  ECF No. 16-11.

The relationship between the parties provides means for FLC to enforce its "rules and regulations which must be followed by all staff/workers in order to effectively meet the health care needs of our community."  ECF No. 16-3, at 7.  The handbook further provides that, through numerous supervisory procedures reviewed by the District Manager, "changes will be made as necessary."  *Id.* at 6.  Indeed, "any violations" of those policies are grounds for termination.  *Id.* at 12.  Likewise, "[a]ny offense which reason, morals or common sense indicate to be of major consequence to FLC clients or staff" is cause for termination."  *Id.*  Further, Hughes is subject to a progressive disciplinary system specifying the grade of punishment resulting from, for example, "excessive" personal telephone use, gossip, or insubordination.  ECF No. 16-6.

In sum, FLC exercises a significant degree of control over Ms. Hughes, to the extent that she does not stand as a separate economic entity.[4]  This factor points strongly toward employee status.

### B.  *Opportunity for Profit or Loss*

"The second factor considers the alleged employee's opportunity for profit or loss depending on his managerial skill."  *Scantland*, 721 F.3d at 1316.  The relevant inquiry here is whether Ms. Hughes's opportunity for profit or loss depends more upon FLC's provision of work orders and Ms. Hughes's technical skill and efficiency than on her managerial skill.  *Id.*

FLC pays Ms. Hughes hourly for shift work.  Under those circumstances, "[t]here is no opportunity for additional income or profit through the exercise of managerial skill or increased efficiency in the manner or means of accomplishing the work."  *Solis*, 2013 WL 1395863, at *7.

FLC argues, however, that Ms. Hughes has "substantial opportunity to realize profit, and loss" on the basis that she is free to *limit* her jobs to those "in a certain geographical area, or those which would pay more than others."  ECF No. 17, at 6.  But the fact remains that Ms. Hughes's only freedom with respect to the jobs she undertakes is the freedom to limit those she accepts.

---

[4] Family Life provides *reasons* for controlling certain aspects of Hughes' work performance, such as prohibiting the acceptance of tips and the use of bleach.  ECF No. 20, at 5.  Irrespective of their merit, these explanations do not undermine the present analysis.

"[T]he independent contractor normally has at least an equal say in the rate to be charged for particular work by bidding on the job or by posting or advertising standard rates for the work to be performed." *Solis*, 2013 WL 1395863, at *6. By contrast, Ms. Hughes has no opportunity to bid for particular jobs. ECF No. 20, at 3. Instead, FLC offers jobs to her at its discretion. *Id.* Ms. Hughes has no opportunity to advertise her desired rate for certain work. *Id.* Rather, FLC determines contract rates with the referring government entities. *Id.* Ms. Hughes cannot negotiate the rate for a job she is offered. *Id.* She can take it or leave it. *Id.*

FLC argues that "by carefully managing time and effort, a CNA can also save on transportation costs." ECF No. 17, at 6–7. FLC does not offer any authority for the assertion that this sort of minimal flexibility suggests the exercise of managerial discretion characteristic of an independent contractor.

In addition to exercising little or no managerial discretion while working for FLC, Ms. Hughes's capacity to realize profit is constrained by FLC even after termination through a broad non-compete agreement. *See* ECF No. 16-9, 16-10. This contract restricts Ms. Hughes from competing for clients "referred or assigned" by FLC, participating in a competing business, or soliciting FLC workers to participate in a competing business for two years in the counties of Clay or Duval. *Id.*

This Court finds that Ms. Hughes has no meaningful opportunity to realize profit or loss by exercising managerial discretion. This factor points toward employee status.

### C. Investment in Equipment or Materials

"The third factor considers the alleged employee's investment in equipment or materials required for his task, or his employment of workers." *Scantland*, 721 F.3d at 1317. The relevant inquiry here is the extent to which any of Hughes's work-related expenditures detract from Hughes's economic dependence on FLC.

Neither party supplies the premises where the work is done. A CNA such as Ms. Hughes provides minimal equipment such as "scrubs, transportation and fuel." ECF No. 17, at 7. Those expenditures detract little from Ms. Hughes's economic dependence on FLC. This factor does not tip the scales toward employee status or independent contractor status in any significant way.

### D. Special Skill

"The fourth factor considers whether the service rendered requires a special skill." *Scantland*, 721 F.3d at 1318. The relevant inquiry here is whether Ms. Hughes is dependent upon FLC to equip her with the skills necessary to perform her job. *Id.*

FLC requires that Hughes be a licensed CNA, "which includes housekeeping, personal care and companionship." ECF No. 16-1, at 2. Some

11

training is required to become a CNA, and certification is provided by the state. ECF No. 20, at 4.  Of course, FLC does not provide the certification.  Moreover, Ms. Hughes is responsible for keeping her ongoing training up to date, which is not provided by FLC.  ECF No. 16-8.

Ms. Hughes is not dependent upon FLC to equip her with the skills necessary to perform her job.  This factor weighs heavily in favor of contractor status.

### E. Permanency and Duration

"The fifth factor considers the degree of permanency and duration of the working relationship." *Scantland*, 721 F.3d at 1318.  The relevant inquiry here is the regularity and length of the working relationship between Hughes and FLC.  *Id.*

Hughes has regularly accepted assignments from FLC for seven years, often working over 40-hour weeks.  ECF No. 16-2.  The contract renews automatically on a monthly basis.  ECF No. 16-9, at 1.[5]

These characteristics strongly point to employee status.  *Scantland*, 721 F.3d at 1319; *Solis*, 2013 WL 1395863, at *7.

### F. Integral Part of Alleged Employer's Business

---

[5] FLC argues that the permanency of the relationship should have discounted significance in light of FLC's requirement under Florida law "to attempt to secure health-care related contracts only from independent contractors." ECF No. 17, 7.  This argument is not persuasive. "[E]ven legal designations in other statutes or governmental regulations, do not affect the determination of a worker's status under the FLSA." *Solis*, 2013 WL 1395863, at *4.

"The sixth and final factor considers the extent to which the service rendered is an integral part of the alleged employer's business." *Scantland*, 721 F.3d at 1319. The relevant inquiry here considers the proportion of FLC's business that is performed by a CNA, as well as the degree of control over the CNA as discussed under the "control" prong, *supra*. *Id.*

FLC "is in the business of home health care." ECF No. 16-1, at 4. The work Ms. Hughes performs as a CNA "is more than an integral *part* of [FLC's] business, it is the *whole* of [FLC's] business." *See Solis*, 2013 WL 1395863, at *7. This factor weighs in favor of employee status.

*G. Weighing The Factors*

An analysis of the six factors viewed through the lens of economic dependence weighs in favor of finding Hughes to be an "employee" of FLC under the FLSA. To summarize, this Court finds that four of the six factors (Control; Opportunity for Profit or Loss; Permanency and Duration; Integral Part of Alleged Employer's Business) weigh in favor of economic dependence. One factor (Investment in Equipment or Materials) is negligible. The remaining factor (Special Skill) weighs heavily in favor of economic independence; however, it should be noted that the work performed by a CNA, even a nurse, "is not necessarily a specialty job in the sense that members of the public do not typically seek them out for private or individual engagements." *See Solis*, 2013 WL

1395863, at *6.  Moreover, these factors are mere guidelines and *none is dispositive*.  *Usery*, 527 F.2d at 1311.  Consideration of the foregoing factors leads this Court to the conclusion that Hughes is an employee of FLC under the FLSA.  A common sense evaluation of the working relationship compels the same result.  It is undisputed that CNAs have the ability to choose when, where, and with whom they work, that indeed they "enjoy a degree of flexibility in their working lives, not shared by many in the workforce."  *Solis*, 2013 WL 1395863, at *7.  However, the reality is that "when the [CNAs] *are* available for work they are dependent upon [FLC] to provide it, and when they are working on assignments for [FLC] they are . . . employees of [FLC]."  *Id.*

### IV.  Conclusion

This Court concludes that Ms. Hughes is an "employee" of FLC under the FLSA.  Ms. Hughes is entitled to partial summary judgment on that issue.

For these reasons,

**IT IS ORDERED**:

Hughes' Motion for Partial Summary Judgment, ECF No. 16, is **GRANTED**.

SO ORDERED on July 30, 2015.

s/Mark E. Walker             
**United States District Judge**