UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

DARLENE HUGHES,

                         Case No.  1:15-cv-00007-MW-GRJ

      Plaintiff,

v.

FAMILY LIFE CARE, INC.
a Florida Corporation,

      Defendant.

### REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Plaintiff, as directed by the Court's Order of November 10, 2016, files this Reply to Defendant's response to her Motion to for Attorney's Fees (ECF No. 84) as follows:

**I.**    **Defendant's Suggested $250 Per Hour Rate is Less Than The $300 Per Hour It Paid Its Own Attorney**

Defendant and its expert argue that a reasonable hourly rate for the undersigned should only be $250 per hour -- $50 less than it paid its own attorney to defend this case. Attached as **Exhibit D** to Plaintiff's Motion for Attorney's Fees is proof that Mr. Aguilar was billing Defendant at $300 for his services, although Mr. Aguilar shows no signs of being an employment or labor law litigator on his website. *See* Doc.

1

79-4. As such, either Mr. Aguilar has billed his client an excessive fee for his services or the notion that only $250 is reasonable for the undersigned is patently incorrect.

Moreover, Mr. Aguilar was paid $300 per hour without the delay and risks of nonpayment factors that would factor into the decision. By way of example, should a client walk any attorney's office stating that payment might be made years from today's date, then the "current" hourly rate charged for the requested services would reflect that payment arrangement. The resulting rate would be well in excess of the $300 Mr. Agular charged his client for the same services, of which he was paid immediately. This is true for any product or service because of both the time value of money and risks built into current prices.

## II.  The Hours Requested Are Reasonable

Defendant cites *Oliva v. Infinite Energy, Inc.* 2013 WL 6815989 (N.D. Fla., Gainesville Div. 2013) for the notion that an attorney cannot bill for the receipt and review of documents such as notices and scheduling orders. However, the *Olivia* decision granted compensation for "8 hours of review" of various documents in that case – an entire day's worth of work. *Id.* at page 16. Moreover, every attorney has an

obligation to review Court orders (and, thus, comply with every word); the argument that reviewing Court Orders, such as the Scheduling Order entered in this case at Doc. 6, is unnecessary legal work is a frivolous argument that is symbolic of Defendant's other attempts to reduce the time necessarily spent in prosecuting this case.

Defendant also attempts to criticize the amount of time the undersigned spent preparing the successful Motion for Partial Summary Judgment. However, that the careful preparation of that motion reduced the amount of time the undersigned had to spend in this case – thus ultimately saving everyone time and expense. Compare that to the situation in *Olivia*, where "Plaintiff took a total of 18 depositions, although she only used 4 of the depositions in her motion for summary judgment." *Id.* at 15. Here, the undersigned took none. Without the Motion for Partial Summary Judgment, not only would discovery been more expansive and expensive but the trial of this case would also have been longer and more involved.

### III. Defendant Delayed in Producing Documents

Defendant also seems to imply it did not delay in producing documents, and thus analysis for missing documents and the review of

them when ultimately produced was unnecessary. However, Defendant's counsel's August 10, 2016 email proves otherwise:

> I checked my documents and neither my client nor I know why the 2013 reports were not included when all the others were printed and furnished to me. I got the 2013 reports and I have enclosed them here.

See attached **Exhibit A**. Even then, as noted in the undersigned's email of September 13, 2016 (also attached hereto as part of **Exhibit A**), documents such as compensation reports for November 24, 2014 and December 8, 2014 were still missing. *Id.* Constant issues and problems such as this necessarily led to more time spent chasing documents that otherwise should have been produced early on in this case.

### IV. The Improperly Married Exhibits Were Correctly Married at The Beginning of Plaintiff's Deposition

Finally, Defendant claims that its "prompt response" resolved the issue regarding its use of Exhibits at trial – it did not. Attached hereto as **Exhibits B** and **C** are color copies of the documents the undersigned was provided at Plaintiff's deposition. Notably, there is no staple holes in the attached **Exhibit B** – demonstrating that it had never been stapled to another document when given to the undersigned at the deposition. **Exhibit C** was, and still is, stapled to its proper

attachment.

Defendant's counsel in his email cites the deposition transcript regarding his questioning of Plaintiff on these documents as arranged at trial. However, that just leads to the conclusion that these documents were improperly arranged at some point during the actual deposition and improper questioning also occurred then (as it did at trial to try to make Plaintiff look as though she was fabricating her hours worked). The copies provided to the undersigned by Defendant's counsel at the deposition are correctly married.  If Defendant's counsel brought to the deposition these exhibits correctly stapled, then they never should have been rearranged at some point during Plaintiff's deposition or for the trial.  Plaintiff (an elderly person without a high level of education) never should have been questioned and misled as if these documents were correctly married. This was no slight error, as the cornerstone of Defendant's defense (and resolute to bring this case to trial) was largely based on argument and testimony regarding these documents.

V. **Defendant's Counsel Prepared the Discovery Response Forcing the Motion to Compel**

Defendant claims that Plaintiff did not tie "the conduct which

5

[she] believes justifies sanctions directly to an improper certificate related to discovery responses," citing *Cherrington Asia Limited v. A&L Underground, Inc.*, 263 F.R.D. 653 (D. Kan, 2010).  However, that case is not at all applicable as it involved a case where "Plaintiffs never specifically claim that certificates signed by A&L's counsel concerning responses to Plaintiffs' discovery requests violated the provisions of Rule 26(g)(1)." *Id. at* 658. Instead, in this case, the improper discovery responses were prepared by Defendant's counsel himself; thus, he would be responsible for such sanctions.

Unlike *Cherrington Asia Limited* which has no apparent similarities to the instant situation, the case previously cited by Plaintiff (*Branhaven LLC v. Beeftek, Inc.*, —F.R.D.—, 2013 WL 388429 (D. Md. Jan. 4, 2013)) is applicable.  There, the court imposed sanctions for discovery violations, including violations of Fed. R. Civ. P. 34(b) addressing the appropriate format of production.  That is very similar, if not practically identical, to the instant situation.

Dated:  November 10, 2016

By /s/ Michael Massey
   Michael Massey, FBN 153680

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing has been provided via electronic means to counsel for the Defendant this November 10, 2016 by filing the same with the Court's electronic filing system. This reply is in 14 point font and has 1094 words.

/s/ Michael Massey
855 E. Univ. Ave.
Gainesville, FL 32601
352.505.8900
Massey@352law.com